## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LEON WEINGRAD, individually and on behalf of all others similarly situated, | : : : | CIVIL ACTION |
| Plaintiff, | : : | NO. 2:23-cv-05114-MAK |
| v. | : : | |
| TOP HEALTHCARE OPTIONS INSURANCE AGENCY, INC., | : : : | |
| Defendant. | : | |

## DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT

78022213;2

Top Healthcare Options Insurance Agency, Inc. ("**THO**") files this reply supporting its Motion to Dismiss Plaintiff's First Amended Class Action Complaint ("**Reply**," "**Motion to Dismiss**," and "**Complaint**," respectively) to address plaintiff Leon Weingrad's ("**Plaintiff**") Response in Opposition to Defendant's Motion to Dismiss (ECF No. 30; "**Response**").  THO's Motion to Dismiss should be granted, and the arguments in the Response do not change that result.

I.   THE COMPLAINT DOES NOT ALLEGE A VIOLATION OF THE TCPA

THO's Motion to Dismiss asserts that Plaintiff fails to state a claim under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("**TCPA**") (Count I) because he answered only one phone call (Compl., ¶ 32) and the TCPA requires a plaintiff prove "more than one" call for telemarketing purposes to state a claim. 47 U.S.C. § 227(c)(5). The Response doubles down on his fatal admission, which precludes Plaintiff from stating a TCPA claim as a matter of law. Response, at 2, 4, 10 (confirming that "Plaintiff answered one" call).  No amendment will change this fact.

Plaintiff speculates that the other calls he allegedly received were from THO and that their purpose was to sell him something.  There are no details about those other calls in the Complaint. Instead, Plaintiff attempts to explain away the speculative nature of the pleading by stacking inferences that are outside the four corners of his own Complaint. *See, e.g.,* Response, at 4 (referencing ObamaCare's Open Enrollment period and stating that because calls took place during that timeframe, the calls at issue here must have been to sell Plaintiff health insurance); Response, at 7 (stating "if the call was not a solicitation, the caller would also likely have left a message"); *Id*. (references a Convoso case study – which is hearsay and outside the four corners – that allegedly discusses THO, purportedly to prove that the calls at issue were solicitations, despite that no such allegations are in the Complaint).  This does not suffice to plausibly establish that Plaintiff received "more than one" call from THO which was a telephone solicitation.

1

Plaintiff attempts to distinguish *Gillam v. Reliance First Cap., LLC*, No. 21-cv-4774-JMA-JMW, 2023 WL 2163775, at *3-4 (E.D.N.Y. Feb. 22, 2023), which is directly on point and dispositive, but his efforts fail. Plaintiff claims that *Gillam* was "strangely" decided. Response, at 5. But the facts are nearly identical to this case. In a TCPA case, Gilliam alleged that he answered one call and thus could not plausibly state that he received "more than one" solicitation from the defendant. *Id.*, at *3. TCPA claim properly dismissed. The same result should follow here.

Plaintiff's Response also fails to address the insufficiency of pleading as it pertains to whether the one call he did answer constituted a solicitation or telemarketing at all. As the Motion to Dismiss made clear, such a pleading deficiency is another basis for dismissal. *See, e.g., Gillam*, 2023 WL 2163775, at *3 (holding that it is insufficient for a TCPA plaintiff to "merely conclude[], without factual support," that a solicitation took place) (citing cases); *Gulden v. Consol. World Travel Inc.*, 2017 WL 3841491, at *3 (D. Ariz. Feb. 15, 2017) (dismissing TCPA claim where plaintiff "d[id] not describe the calls, but simply aver[red] that the calls were made 'for the purpose of soliciting for [Defendant's] products or services[,]'" which the court held was "nothing more than a conclusion, which *Twombly* specifically prohibits."). The Response does not meaningfully address this point.

II.   **PLAINTIFFS PTRA CLAIM IS LEGALLY INSUFFICIENT**

The Motion to Dismiss makes clear that there is no private cause of action under the Pennsylvania Telemarketer Registration Act, 73 P.S. § 2243, *et seq.* ("**PTRA**"). Plaintiff's Response acknowledges that "[t]here is no private right of action explicitly under the PTRA." Response, at 15. This is not a new admission for Plaintiff's counsel. *See Perrong v. CMI Mktg. Rsch. Inc.*, No. 22-cv-3733, 2023 WL 6277299, at *3 (E.D. Pa. Sept. 26, 2023) (stating that "Mr. Perrong acknowledges that there is no private right of action under the PTRA"); *see also Perrong*

2

*v. MLA Int'l, Inc.*, No. 6:20-CV-1606-RBD-EJK, 2022 WL 1238603, at *5 (M.D. Fla. Mar. 2, 2022), *report and recommendation adopted in part, rejected in part*, No. 6:20-CV-1606-RBD-EJK, 2022 WL 1238609 (M.D. Fla. Mar. 18, 2022) (holding that Mr. Perrong, acting as a *pro se* plaintiff, could not maintain a PTRA claim as a matter of law because no private cause of action existed, and denying his motion for a default judgment on that claim). The Court's analysis should end there. But even if it doesn't, the PTRA claim in Count II is insufficient as a matter of law.

Plaintiff argues that the PTRA claim survives because a PTRA violation is a "predicate claim under the [Unfair Trade Practices and Consumer Protection Law ("**UTP/CPL**")]," which does provide a private cause of action. Response, at 15. But Plaintiff's Complaint does not assert a claim under the UTP/CPL. Count II is a PTRA claim, and nothing else. That dooms Count II. The case that Plaintiff cites, *Comm v. Peoples Benefit Servs.*, 923 A.2d 1230 (Pa. Commw. Ct. 2007) is inapposite, as that was a PTRA enforcement action brought by the Pennsylvania Attorney General, not a civil plaintiff asserting a private cause of action.

Even assuming *arguendo* that there was a private cause of action available to Plaintiff under the roundaboutly pled UTP/CPL/PTRA theory (there is not), Plaintiff has not – and cannot – plead the elements of such a claim, and no amendment will change that. Indeed, a UTP/CPL claim absolutely requires that the plaintiff actually "***purchase[d] or lease[d] goods or services*** primarily for personal, family or household purposes ***and*** thereby ***suffer[ed] any ascertainable loss*** of ***money*** or property, real or personal." 73 P.S. § 201-9.2(a) (emphasis added); *Perrong v. CMI Mktg. Rsch. Inc.*, *supra* (same). There are two prongs to this requirement, (1) the actual purchase or lease of goods or services, and (2) an ascertainable loss. Neither are pled or present.

Plaintiff glosses over the "actual purchase or lease" requirement, instead rejecting the notion that it is an element of the claim. *See* Response, at 16 (stating that it would be "downright

3

peculiar for the General Assembly to… require[] the purchase of goods or services directly from a telemarketer"). Yet, that is exactly what the statute and case law provide, and Plaintiff offers no explanation of why his theory of "downright peculiar[ity]" is correct. The plain language of the statute controls. Plaintiff's entire claim in his Complaint is that he "never did business with the Defendant." Compl., ¶ 25. He cannot allege that he purchased or leased anything. This alone is fatal to the already legally insufficient PTRA claim. But he fails the other prong too.

Plaintiff did not suffer any actual damages. Plaintiff claims that "the expenses incurred in seeking two court orders and serving subpoenas to identify the Defendant constitute "ascertainable loss of money or property." Response, at 16-17. This ridiculous assertion should be rejected out of hand. *First*, the Response does not state that Plaintiff himself paid for those costs, and does not state what those costs allegedly were. If those costs were paid by Plaintiff's counsel, for example, they were not incurred by Plaintiff and were instead mere litigation costs, which do not form part of the elements of Plaintiff's cause of action – which requires actual damages. *Second*, those costs, if they were indeed incurred by Plaintiff, did not arise until well after litigation commenced. Thus, they did not flow from any alleged violation of the PTRA or UTP/CPL. Plaintiff must have suffered the damages at the time when the cause of action was pled. Otherwise, the elements of the cause of action were not present and met when the cause of action accrued. This is fatal to Plaintiff's claim.[1] *See, e.g.*, *Hoffman v. Nissan Infiniti LT*, 840 F. App'x 694, 696 (3d Cir. 2021)

---

[1] It is worth noting that, if litigation costs are Plaintiff's alleged actual damages, and they arose as a result of Plaintiff "seeking two court orders and serving subpoenas to identify the Defendant," then Plaintiff is a class of one. Yet, he asserts a putative class action for violations of the PTRA. There is no way that any other putative member of any class could be similarly situated to Plaintiff. Even assuming for the sake of argument that Plaintiff's theory is correct, THO has been identified as the alleged wrongdoer here. No other Plaintiff will need to "seek[] two court orders" or "serv[e] subpoenas to identify Defendant." Thus, no class is maintainable for Plaintiff's putative PTRA claim. Of course, the Court should never reach this issue, because there is, by Plaintiff's admission, no private cause of action under the PTRA. Response, at 15.

(dismissing claim and holding that the "costs that Hoffman incurred suing NILT are not an ascertainable loss" under a similar statute); *Levy-Tatum v. Navient & Sallie Mae Bank*, No. CV 15-3794, 2016 WL 75231, at *1 (E.D. Pa. Jan. 7, 2016) (merely retaining counsel to prosecute a UTPCPL claim does not qualify as an "ascertainable loss.").

Plaintiff then spends five pages in the Response attempting to articulate a "damages" analysis based on his admitted "back-of-the-envelope calculations" (Response, at 18) to somehow show that he suffered actual damages based on the "occupation of telephone lines, storage space, and bandwidth" on his phone. Response, at 17. This five pages of stream-of-consciousness does little to change the lack of actual damages suffered by Plaintiff, or more specifically, the lack of an "***ascertainable loss*** of money or property, real or personal" required to state a claim under the UTP/CPL. 73 P.S. § 201-9.2(a) (emphasis added).

As a threshold matter, the "occupation of telephone lines, storage space, and bandwidth" on a phone, even if it is ultimately shown that these things occurred as a result of calls allegedly made by THO, is by definition not an "ascertainable loss of money or property." The "harms" are all intangible, non-specific and non-concrete; the opposite of ascertainable. *See* Compl., ¶ 40 (describing "harm" because Plaintiff was "annoyed and harassed" and the alleged calls "occupied their telephone lines, storage space, and bandwidth"). Plaintiff does not identify <u>any</u> actual loss of "money or property" ***in the Complaint***. His concocted damages theory in the Response relies on a multitude of stacked assumptions based on, among other things, "the average life of a smart phone," the cost of a smartphone (he uses an iPhone as an example, but there are hundreds of smart phones), the "taxes, accessories and fees" associated with the purchase of a phone, what "each minute of smartphone ownership costs," the "practical runtime of" a phone, the wattage of the charge, the efficiency of the charger, the amount of time to charge a phone, the "charge power

5

consumption," the cost to charge a phone, the technology used to place phone calls (he now uses Android instead of iPhone as his example), the maximum bandwidth of a phone, the "storage space for the calling record," and the cost of mobile data plans (of which again, there are hundreds of options). *See* Response, at 18-19.

After making these unsupported arguments based on sheer hypotheticals, Plaintiff asserts that "Plaintiff and the class have calculable damages capable of classwide, mathematical proof."[2] Response, at 20. Yet, even under Plaintiff's misguided theory, he has not plausibly set forth an ascertainable loss. He claims that "putative class members who received nine one minute long telemarketing calls" sustained a loss of 3.73 cents.[3] While he does not expressly state that 3.73 cents was *his* loss, that is the inference, but he admits in the same breath that the alleged losses must be "more precisely calculated." *Id.*

It is not reasonable and is contrary to the statutory language of the UTP/CPL and governing law, to conclude that "back-of-the-envelope calculations," which are not exact and require "more precise[] calculat[ions]" by Plaintiff's own admission, constitute "ascertainable loss." Indeed, to be "ascertainable," the amount must be precise. *See, e.g., Hoffman*, 840 F. App'x at 695 (explaining that "ascertainable loss" under a similar statute requires a "quantifiable or measurable" injury and "not [a] hypothetical or illusory" one); *Baldwin v. Monterey Fin. Servs., Inc.*, No. 3:14-CV-2346, 2017 WL 4767696, at *5 (M.D. Pa. Oct. 20, 2017) (stating that "ascertainable loss" under the UTP/CPL must be "non-speculative" and that the plaintiff "must be able to show an actual loss of

---

[2]   The notion that there is a "calculable damages capable of classwide, mathematical proof" based on Plaintiff's ridiculous, concocted theory, should be rejected out of hand. There is no way that putative members of any class could be similarly situated to Plaintiff, given the number of variables involved in Plaintiff's "actual damages" model. No class treatment would be proper as a matter of law. Plaintiff has effectively admitted as much.

[3]   Even based on his own concocted figures, Plaintiff's math is wrong.

money or property," and rejecting UTP/CPL claim because there was no ascertainable loss as a result of a call/voicemail from defendant to plaintiff); *In re Marshall*, 613 B.R. 194, 214 (Bankr. E.D. Pa. 2020), *aff'd sub nom. Marshall v. Abdoun*, No. CV 22-0010, 2023 WL 2588166 (E.D. Pa. Mar. 20, 2023), and *aff'd sub nom. Marshall v. Abdoun*, No. CV 22-0010, 2023 WL 2588166 (E.D. Pa. Mar. 20, 2023) (stating that "[o]nly an actual, non-speculative, identifiable loss constitutes an ascertainable loss for purposes of the UTPCPL"); *In re Rutter's Inc. Data Sec. Breach Litig.*, 511 F. Supp. 3d 514, 541 (M.D. Pa. 2021) ("[t]o allege an ascertainable loss, the plaintiff must be able to point to money or property ***that he would have had*** but for the defendant's fraudulent actions," and which "cannot be speculative") (emphasis added; cleaned up); *Riviello v. Chase Bank USA, N.A.*, No. 3:19-CV-0510, 2020 WL 1129956, at *3 (M.D. Pa. Mar. 4, 2020) (quoting *Benner v. Bank of Am., N.A.*, 917 F. Supp. 2d 338, 359 (E.D. Pa. 2013)) (same); *Jarzyna v. Home Properties, L.P.*, 185 F. Supp. 3d 612, 626 (E.D. Pa. 2016), *aff'd*, 783 F. App'x 223 (3d Cir. 2019).

Finally, there is a causation requirement under the UTP/CPL. The "ascertainable loss of money or property" must "result[] from the use or employment ... of a method, act, or practice declared unlawful by the UTPCPL," and "plaintiffs [must have] justifiably relied on the deceptive conduct." *Abraham v. Ocwen Loan Servicing, LLC*, 321 F.R.D. 125, 153, n.11 (E.D. Pa. 2017). Even taking as true everything Plaintiff lays out, and even assuming that Plaintiff's "ascertainable damages" theory were viable (it is not), there is no plausible way that the alleged losses complained of (*e.g.*, occupation of telephone lines, storage space, and bandwidth) "resulted from" THO allegedly not registering with the Pennsylvania Attorney General as a telemarketer and that Plaintiff suffered alleged losses because he "justifiably relied" on THO's purported failure to register. *See Nelson v. State Farm Fire & Cas. Co.*, 464 F. Supp. 3d 741, 755 (W.D. Pa. 2020) (reiterating causation requirement under the UTP/CPL, stating that "[i]n order to recover damages

7

under the UTPCPL, a plaintiff must demonstrate an ascertainable loss *as a result of* the defendant's prohibited action") (citations omitted; emphasis added). It would be impossible for Plaintiff to establish causation here. THO's purported failure to register with the Pennsylvania Attorney General as a telemarketer, even if true, could not have caused the damages or harms alleged.

### III.     PLAINTIFF LACKS STANDING TO SEEK INJUNCTIVE RELIEF

Plaintiff's Response glosses over the binding U.S. Supreme Court and Third Circuit precedent cited by THO that governs this issue, which requires that there must be a threat of future harm or repeated injury *to Plaintiff* to obtain injunctive relief. Instead, Plaintiff attempts to shift the focus to irrelevant facts about THO generally. For example, without argument or support, Plaintiff argues that "the Court can take judicial notice of continuous complaints" about calls that individuals *other than Plaintiff* are allegedly receiving from THO. *See* Response, at 12. Not only is there no legally sound basis for judicial notice of these "facts" (and to be sure, Plaintiff does not offer one), but they also do not appear in the Complaint and have no bearing on whether Plaintiff himself has standing to seek injunctive relief. The standing inquiry, by its very nature and as set forth in the Motion to Dismiss, focuses on threats of future harm or repeated injury to Plaintiff, no one else. Neither Plaintiff's Complaint nor the Response meets the injunctive relief standard.

Plaintiff also argues in the Response that without an injunction "Defendant has used and will continue to use" a fake name. *Id*. But this allegation – even if true – has no bearing on Plaintiff's request for injunctive relief. The Complaint only asks for injunctive relief to enjoin THO from "making telemarketing calls to numbers on the National Do Not Call Registry, absent an emergency circumstance." *See* Compl., at 12, Prayer for Relief, ¶ D. Thus, Plaintiff's argument in the Response that an injunction is required to prevent THO from using a "fake name" is not even relief that is requested in the Complaint.

8

Plaintiff also avers that, "as a telephone user, Plaintiff is at risk of future telemarketing calls from Defendant," generally.  Response, at 12.  Apparently, Plaintiff is arguing that merely because he is one of hundreds of millions of Americans that uses a phone, that gives him standing to seek injunctive relief.  Under this line of reasoning, nearly every American would have standing to sue THO for injunctive relief.  That is an absurd argument, one directly contrary to the strict Case or Controversy requirements mandated by Article III.

In sum, there is no threat of future harm to Plaintiff.  None has been pled or proffered. The Complaint merely refers to past conduct from December 2023 – more than eight (8) months ago and is devoid of tangible allegations that there is a threat of future calls. Without rehashing the arguments set forth in the Motion to Dismiss, suffice it to say that Plaintiff's Complaint and Response fail to meet the burden for surviving the Motion to Dismiss Plaintiff's claim for injunctive relief.  The request for injunctive relief should be dismissed or stricken, just as the Honorable Judge Mark Kearney recently ruled under similar circumstances. *See, e.g.*, *Curdo v. Cnty. of Chester*, No. CV 24-132, 2024 WL 710881, at *4 (E.D. Pa. Feb. 21, 2024) (Kearney, J.); *In re BPS Direct, LLC*, No. 22-CV-4709, 2023 WL 8458245, at *20-21 (E.D. Pa. Dec. 5, 2023) (Kearney, J.).  Tellingly, Plaintiff makes no effort to distinguish or discuss *Curdo* or *In Re BPS*, or any of the other TCPA specific decisions cited by THO in its Motion to Dismiss dismissing or striking injunctive relief requests. If his claims survive, the injunctive relief request should not.

IV. **PLAINTIFF'S TREBLE DAMAGES ALLEGATIONS ARE INSUFFICIENT**

Rather than address the substance of THO's Motion to Dismiss, Plaintiff again resorts to the use of conclusory and unsupported catch phrases to distract from his inability to properly plead his claims (*see, e.g.*, Response, at 13 (stating that "Defendant knew what it was doing was illegal")). Plaintiff also again erroneously argues that THO's alleged use of a "fake name"

9

somehow means that THO violated the TCPA willfully or knowingly. But Plaintiff does not plead any claim asserting a violation of any provision of any law for the alleged use of a "fake name" by THO. *See* Complaint, *generally*. His only claims are a TCPA "Do Not Call" claim, and a PTRA claim. Neither alleges a violation for the use of a "fake name." Thus, those facts, even taken as true, have no bearing on the issue before the Court. And again, Plaintiff argues facts that do not appear in his Complaint. *See* Response, at 13 (citing Plaintiff's motion for discovery (ECF No. 8) as a basis for treble damages).

Tellingly, Plaintiff does not address any of the TCPA cases cited by THO dismissing or striking treble damage requests from a complaint where the pleading is bereft of factual support, including but not limited to, a case where Mr. Perrong (Plaintiff's counsel) was himself the pro se plaintiff. *See, e.g.*, *Perrong v. MLA Int'l, Inc.*, 2022 WL 1238603, at *5 (rejecting motion for default judgment and recommending that the Court "decline to award treble damages" because the complaint contained "no factual allegations to establish that Defendants willfully or knowingly violated the TCPA, other than conclusory statements that the violations were 'knowing and/or willful.'"). If his claims survive, Plaintiff's request for treble damages should be stricken.

## V.     CONCLUSION

For the foregoing reasons, THO respectfully requests that the Court enter an Order dismissing Plaintiff's Complaint with prejudice, awarding THO its attorneys' fees and costs to the fullest extent permissible by law, and granting THO such further and additional relief as the Court deems just and proper.

Dated: September 16, 2024.　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　/s/  *Jeffrey B. Pertnoy*
　　　　　　　　　　　　　　　　　　　　Jeffrey B. Pertnoy, Esq. (Admitted *Pro Hac Vice*)
　　　　　　　　　　　　　　　　　　　　**AKERMAN LLP**
　　　　　　　　　　　　　　　　　　　　Three Brickell City Centre
　　　　　　　　　　　　　　　　　　　　98 Southeast Seventh Street
　　　　　　　　　　　　　　　　　　　　Suite 1100
　　　　　　　　　　　　　　　　　　　　Miami, Florida 33131
　　　　　　　　　　　　　　　　　　　　Direct Office: 305.982.5524
　　　　　　　　　　　　　　　　　　　　jeffrey.pertnoy@akerman.com

　　　　　　　　　　　　　　　　　　　　- and -

　　　　　　　　　　　　　　　　　　　　**KAUFMAN DOLOWICH LLP**
　　　　　　　　　　　　　　　　　　　　Richard J. Perr, Esq.
　　　　　　　　　　　　　　　　　　　　Monica M. Littman, Esq.
　　　　　　　　　　　　　　　　　　　　Matthew E. Selmasska, Esq.
　　　　　　　　　　　　　　　　　　　　One Liberty Place
　　　　　　　　　　　　　　　　　　　　1650 Market Street, Suite 4800
　　　　　　　　　　　　　　　　　　　　Philadelphia, PA 19103
　　　　　　　　　　　　　　　　　　　　T: 215.501.7002 F: 215.405.2973
　　　　　　　　　　　　　　　　　　　　rperr@kaufmandolowich.com
　　　　　　　　　　　　　　　　　　　　mlittman@kaufmandolowich.com
　　　　　　　　　　　　　　　　　　　　matthew.selmasska@kaufmandolowich.com

　　　　　　　　　　　　　　　　　　　　*Attorneys for Defendant*

## **CERTIFICATE OF SERVICE**

I, Jeffrey B. Pertnoy, certify that, on the date indicated below, I caused to be served a true and correct copy of Defendant's Reply in support of its Motion to Dismiss on all counsel of record in this action via the Court's CM/ECF system.

Dated: September 16, 2024　　　　　　　　*/s/ Jeffrey B. Pertnoy*
　　　　　　　　　　　　　　　　　　　　Jeffrey B. Pertnoy, Esq. (Admitted *Pro Hac Vice*)